1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                                DISTRICT OF NEVADA

8                                        * * *
                                           )
9    BIG-D CONSTRUCTION CORP.,             )
                                           )
10              Plaintiff,                  )
                                           )
11   v.                                     )        2:11-cv-00621-PMP-PAL
                                           )
12   TAKE IT FOR GRANITE TOO, et al.,       )
                                           )        **ORDER**
13              Defendants.                 )
     _____ )

14

15          Before the Court is Defendant Nautilus Insurance Company's ("Nautilus")

16   Motion for Summary Judgment (Doc. #41), filed on July 5, 2012.  Plaintiff Big-D

17   Construction Corp. ("Big-D") filed a Response (Doc. #51) on August 3, 2012.  Nautilus

18   filed a Reply (Doc. #54) on August 24, 2012.

19          Also before the Court is Defendant Century Surety Company's ("Century")

20   Motion for Summary Judgment (Doc. #55), filed on August 31, 2012.  Big-D filed a

21   Response (Doc. #62) on September 24, 2012.  Century filed a Reply (Doc. #70) on

22   November 2, 2012.  Big-D filed a Motion to Strike Certain of Defendant Century's Exhibits

23   in Support of its Motion for Summary Judgment (Doc. #61) on September 24, 2012.

24   Century filed a Response (Doc. #71) on November 2, 2012.  Big-D filed a Reply (Doc. #76)

25   on November 19, 2012.  The Court held a hearing on these motions on December 20, 2012.

26   (Mins. of Proceedings (Doc. #85).)

# I.  BACKGROUND

## A.  The Policies

On March 10, 2005, International Gaming Technologies ("IGT") and Big-D entered into a contract whereby Big-D would be the general contractor for remodeling IGT's Las Vegas building.  (Def. Nautilus Ins. Co.'s Mot. for Summ. J. (Doc. #41) ["Nautilus Mot. Summ. J."], Ex. A at 1.)  Thereafter, Big-D and Defendant Take it for Granite Too ("TIFGT") entered into a subcontract whereby TIFGT would install various tiling and stonework on the interior and exterior of the IGT building.  (Id., Ex. B at ex. B.)

Defendant Nautilus insured TIFGT under a Commercial General Liability ("CGL") insurance policy from February 1, 2007 to February 1, 2008, and under another CGL insurance policy from February 1, 2008 to February 1, 2009.  (Id., Exs. C & D.)  The policies from Nautilus contain the same pertinent provisions, and they will be referenced collectively as the "Nautilus Policy."  The Nautilus Policy included an endorsement which amended the Policy to include Big-D as an additional insured with regard to the performance of TIFGT's ongoing operations for Big-D.  (Id., Ex. F.)  TIFGT cancelled the Nautilus Policy effective June 1, 2008.  (Id., Ex. E.)

Defendant Century issued TIFGT a CGL insurance policy ("Century Policy") from June 1, 2008 to February 26, 2009.  (Def. Century Surety Co.'s Mot. For Summ. J. (Doc. #55) ["Century Mot. Summ. J."], Ex. B at 3, Ex. I.)  The Century Policy contained a blanket additional insured endorsement which provided coverage for Big-D for property damage arising out of TIFGT's ongoing operations.  (Id., Ex. B at 53.)

## B.  TIFGT's Stonework

TIFGT began its stonework at the IGT building sometime in 2007.  In April 2008, while TIFGT still was installing stonework, a stone tile installed by TIFGT fell from an exterior wall of the IGT building.  (Nautilus Mot. Summ. J., Ex. I at 6; Opp'n to Mot. for Summ. J. By Nautilus Ins. Co. (Doc. #51) ["Opp'n to Nautilus Mot. Summ. J."], Ex. 2 at

23, 73, 116.)  Certificates of Occupancy for the IGT building were issued on May 16, 2008, and June 16, 2008.  (Nautilus Mot. Summ. J., Ex. H.)  Certificates of Completion were issued on May 19, 2008, and June 26, 2008.  (Id., Ex. G.)  However, Brent Brinkerhoff ("Brinkerhoff"), a representative of Big-D, testified he did not believe TIFGT ever completed its stonework obligation under the subcontract.  (Opp'n to Nautilus Mot. Summ. J., Ex. 1 at 92-93, 97.)

On July 22, 2008, IGT notified Big-D that another stone installed by TIFGT had fallen from the same exterior wall of the building.  (Nautilus Mot. Summ. J., Ex. K at 1; Opp'n to Nautilus Mot. Summ. J., Ex. 2 at 25, 73.)  After the second stone tile fell, IGT directed Big-D to replace TIFGT's stonework on the wall from which the two stone tiles had fallen.  (Nautilus Mot. Summ. J., Ex. I at 6, Ex. K at 2-3.)  Big-D thus ordered new stone tiles and scheduled the replacement for the spring of 2009.  (Opp'n to Nautilus Mot. Summ. J., Ex. 1 at 34-35.)

On December 29, 2008, IGT notified Big-D that a third stone tile installed by TIFGT had fallen from a different exterior wall of the building.  (Nautilus Mot. Summ. J., Ex. K at 10-11; Opp'n to Nautilus Mot. Summ. J., Ex. 2 at 73-74.)  The tiles fell near IGT's main entrance for customers and employees.  (Opp'n to Nautilus Mot. Summ. J., Ex. 2 at 33.)  Each stone tile weighed from 25 to 40 pounds.  (Id., Ex. 2 at 24.)  Due to the safety risk to people using the main entrance, after the third stone tile fell in December 2008, Big-D put up scaffolding around the stone tiles, closed the area off, and directed people to enter using a side entrance.  (Id., Ex. 2 at 92-93, Ex. 3 at 26, Ex. 4 at 95.)

IGT expressed concern that the second and third stone tiles fell due to a lack of a mortar bond between the tile and the substrate to which it was attached.  (Nautilus Mot. Summ. J., Ex. K at 2-3, 11.)  IGT directed Big-D to replace all of the stonework done by TIFGT, rather than just the wall where the first two stone tiles fell.  (Opp'n to Nautilus Mot. Summ. J., Ex. 3 at 62-63.)

Big-D advised TIFGT of the tile problem in January 2009 and requested TIFGT take immediate steps to remedy the problem, but TIFGT did not respond.  (Nautilus Mot. Summ. J., Exs. L and M.)  Around that time, TIFGT notified Big-D that it was going out of business.  (Opp'n to Nautilus Mot. Summ. J., Ex. 1 at 38-39.)

Inspection of the building in March 2009 revealed efflorescence between the tile and the substrate.  (Opp'n to Mot. for Summ. J. by Century Surety Co. (Doc. #62) ["Opp'n to Century Mot. Summ. J."], Ex. 6 at 92, 97-98, Ex. 9 at 129; Resp. to Mot. to Strike, Ex. HH at 43, 48-49.)  Efflorescence is when the stone starts to "deteriorate, spall, become soft," and is caused by water entering through an open joint and getting behind the stone tile, and as the water dries it is drawn through the stone tile.  (Opp'n to Century Mot. Summ. J., Ex. 6 at 48-49.)

Big-D's expert concluded "the primary cause of the tile failures was that the installers did not apply the thin-set mortar adhesive properly," and that the "only way to remediate this deficiency and avoid potential safety issues is to remove and replace all of the tiles."  (Nautilus Mot. Summ. J., Ex. AB at 10-11.)  Big-D's expert also concluded that because the plaster substrate was substantially damaged by the removal of various stone tiles during the experts' investigation, it would be "necessary to completely remove the plaster substrate and reapply it" after removing the stone tiles.  (Id., Ex. AB at 11.)  Another of Big-D's consultants concluded that there were "more concerns than just the proper application of stone to the backup plaster," including loose and separated plaster in the stucco substrate to which the stone was attached.  (Nautilus Mot. Summ. J., Ex. N.)

Brinkerhoff testified that because some stone tiles adhered to the substrate and some did not, that "nobody could guarantee that [a tile] would not fall off so eventually a decision was made to remove it all."  (Opp'n to Nautilus Mot. Summ. J., Ex. 1 at 41.)  Big-D's representatives also testified that "structurally the [stucco substrate] product was good," and that the removal is what damaged the stucco.  (Id., Ex. 1 at 94-95, Ex. 2 at 29, 114.)

Big-D and IGT entered into a settlement agreement on April 9, 2009, under which IGT would withhold some payment to Big-D pending resolution of the stone tile work issues, but otherwise IGT would pay Big-D for other satisfactorily completed work. (Nautilus Mot. Summ. J., Ex. T at 5; Opp'n to Nautilus Mot. Summ. J., Ex. 2 at 93-101.) Big-D eventually contracted with another subcontractor to install a new substrate after the stone tiles were removed.  (Nautilus Mot. Summ. J., Ex. O.)  However, after further complications and dissatisfaction with Big-D's repair work, IGT did not allow Big-D to complete the repair.  (Opp'n to Nautilus Mot. Summ. J., Ex. 2 at 124-25.)

In April 2009, Big-D filed a complaint against IGT in state court to foreclose on the mechanic's lien Big-D held against the IGT property.  (Century Mot. Summ. J., Ex. R.) IGT did not file an answer or assert counterclaims against Big-D.  (Id., Ex. W.)  In January 2011, Big-D and IGT amended the settlement agreement, and IGT agreed to accept an offset against the gross amount of Big-D's damages claim as full and complete settlement to resolve the stone tile issues between Big-D and IGT.  (Id., Ex. S at ex. 10 at 3.)  On March 10, 2011, Big-D voluntarily dismissed its claims against IGT with prejudice.  (Id., Ex. L.)

**C. Nautilus's Handling of the Claim**

On April 20, 2009, Travelers Insurance Company ("Travelers"), Big-D's direct insurer, sent Nautilus notice of the potential construction defect claim by IGT against Big-D. (Nautilus Mot. Summ. J., Ex. U.)  On July 15, 2009, Travelers sent Nautilus a second notice of this matter.  (Id.)  On July 29, 2009, Nautilus sent a letter to Travelers stating Nautilus was investigating the issue under a reservation of rights and requested more information.  (Id., Ex. W.)  Nautilus sent a letter to TIFGT and Big-D's counsel requesting the same documents.  (Id., Exs. X & Y.)  Counsel for Big-D sent Nautilus Big-D's job file for TIFGT's work and photographs from the site.  (Id., Ex. Z.)

In January 2010, Travelers e-mailed Nautilus requesting "a response to our additional insured tender."  (Id., Ex. AA.)  After this, a series of communication between

Nautilus and Travelers occurred, with Nautilus asking for work invoices showing the dates that TIFGT worked on the project and when TIFGT completed its work, and Travelers requesting a coverage decision.  (Id., Exs. X & AA.)

### D. Century's Handling of the Claim

On April 20, 2009, Travelers sent a letter tendering the IGT claim to Century, asserting Big-D's status as an additional insured under the Century Policy.  (Century Mot. Summ. J., Ex. C.)  In May 2009, Century spoke with a Travelers agent, and noted that "the building owners believe there is more potential problems with the stone."  (Id., Ex. F at 201.)  Century then wrote to TIFGT, requesting documents and reserving its rights to deny coverage.  (Id., Ex. E.)  In November 2009, Big-D's counsel sent Century a letter acknowledging Century's investigation under a full reservation of rights and requesting an update on the status of that investigation and a coverage determination.  (Century Mot. Summ. J., Ex. G at 49.)  Century hired an investigator in March 2010 to determine when the building was completed, and the investigator issued a report in April 2010.  (Id., Ex. H.; Opp'n to Century Mot. Summ. J., Ex. 7 at 39.)  On June 21, 2010, Century sent a letter to TIFGT denying coverage for the IGT claim, and disclaiming any obligation to defend or indemnify TIFGT or anyone else claiming coverage under the Century Policy.  (Century Mot. Summ. J., Ex. K.)

### E. Present Litigation

Big-D thereafter filed suit in Nevada state court against TIFGT, Nautilus, and Century.  (Pet. For Removal of Action Under 28 U.S.C. § 1441 (Doc. #1), Ex. A ["Compl."].)  Nautilus removed the case to this Court, and Century and TIFGT consented to the removal.  (Pet. For Removal (Doc. #1); Def. Century Surety Co.'s Joinder & Consent to Removal (Doc. #4); Def. Take it for Granite Too's Joinder & Consent to Removal (Doc. #12).)  Big-D requests a declaratory judgment against both Century and Nautilus which declares Big-D's rights to coverage under both insurance Policies (counts 4 and 5,

respectively).  (Compl. at 6-7.)  Big-D additionally alleges breach of contract (count 6) and unfair insurance claims practices under Nevada statutes (count 7) against Nautilus and Century.[1]  (Id. at 7-9.)

Nautilus and Century now move for summary judgment, arguing their Policies do not cover Big-D's damages for various reasons, and they did not commit unfair insurance practices.  Big-D opposes both motions.

## II.  LEGAL STANDARDS

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a), (c).  A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue is "genuine" if sufficient evidence exists such that a reasonable fact finder could find for the non-moving party.  In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008).

Initially, the moving party bears the burden of proving there is no genuine issue of material fact.  Leisek v. Brightwood Corp., 278 F.3d 895, 898 (9th Cir. 2002).  After the moving party meets its burden, the burden shifts to the non-moving party to produce evidence that a genuine issue of material fact remains for trial.  Id.  The Court views all evidence in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party.  Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn., 555 U.S. 271, 274 n.1 (2009).

The interpretation of an insurance contract is a question of law for the court.  Powell v. Liberty Mut. Fire Ins. Co., 252 P.3d 668, 672 (Nev. 2011).  "An insurance policy should be read as a whole, and its language should be analyzed from the perspective of one

---

[1]  Big-D alleges breach of contract (count 1), negligence (count 2), and failure to indemnify (count 3) against TIFGT.

untrained in law or in the insurance business.  Policy terms should be viewed in their plain, ordinary and popular connotations."  Fourth St. Place v. Travelers Indem. Co., 270 P.3d 1235, 1239 (Nev. 2011) (quotation omitted).  "[A]ny ambiguity or uncertainty in an insurance policy must be construed against the insurer and in favor of the insured."  Benchmark Ins. Co. v. Sparks, 254 P.3d 617, 621 (Nev. 2011) (quotation omitted).  "A provision in an insurance policy is ambiguous if it is reasonably susceptible to more than one interpretation."  Id. (quotation omitted).  "Ultimately, a court should interpret an insurance policy to effectuate the reasonable expectations of the insured."  Powell, 252 P.3d at 672 (quotation omitted).

**III.  DECLARATORY JUDGMENT AND BREACH OF CONTRACT (COUNTS 4-5)**

Nautilus moves for summary judgment on Big-D's declaratory judgment and breach of contract claims against it.  Nautilus argues there was no occurrence or property damage under the policy, the damages occurred after the policy was cancelled, various exclusions in the policy apply, and Big-D's voluntary settlement with IGT precludes coverage.

Century also moves for summary judgment on Big-D's declaratory judgment and breach of contract claims against it.  Century argues it had no duty to indemnify Big-D, there is no property damage, and even if there was property damage it occurred prior to or after the Century Policy's coverage period.  Century also argues various exclusions bar coverage.  Century further contends Big-D did not give prompt notice of the claim or obtain Century's consent for the IGT settlement, which precludes coverage.

Big-D responds that there are genuine issues of material fact as to whether Century had a duty to indemnify.  Big-D also argues genuine issues of material fact remain as to whether an occurrence or property damage occurred under the Policies, when the property damage occurred, whether the exclusions apply, whether notice of the claim was prompt, and whether attempting to obtain consent for the settlement would have been futile.

**A. "Occurrence"**

Nautilus contends that TIFGT's faulty or poor workmanship installing the stone tiles was not an accident, and is therefore not an "occurrence" under the Nautilus Policy. Big-D responds that there is a genuine issue of material fact as to whether TIFGT's deficient construction work is an occurrence because deficient construction work is an unexpected, unforeseen, and unintended happening.

Under both the Nautilus Policy and the Century Policy, coverage extends to "property damage" caused by an "occurrence."  (Nautilus Mot. Summ. J., Ex. D at Comm. Gen. Liability Coverage Form ["CGL Coverage Form"], Sec. I, ¶ 1.b(1); Century Mot. Summ. J., Ex. B at 41.)  Both policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Nautilus Mot. Summ. J., Ex. D at CGL Coverage Form, Sec. V, ¶ 13; Century Mot. Summ. J., Ex. B at 21.)

The Policies do not define accident, however, the Nevada Supreme Court has defined "accident," in the absence of a definition in a CGL policy, as "a happening that is not expected, foreseen, or intended." Beckwith v. State Farm Fire & Cas. Co., 83 P.3d 275, 276 (Nev. 2004) (en banc) (quotation omitted).  The Nevada Supreme Court has not determined whether an insured's faulty workmanship itself constitutes an accident, and therefore an occurrence.  Consequently, the Court must predict how the Nevada Supreme Court would decide the issue.  Burlington Ins. Co. v. Oceanic Design & Constr., Inc., 383 F.3d 940, 944 (9th Cir. 2004).

The majority of courts that have addressed the issue have found faulty workmanship itself is not an accident and therefore not an occurrence under a CGL policy. See Essex Ins. Co. v. Holder, 261 S.W.3d 456, 459-60 (Ark. 2007) ("Faulty workmanship is not an accident; instead, it is a foreseeable occurrence, and performance bonds exist in the marketplace to insure the contractor against claims for the cost of repair or replacement of

faulty work."); <u>Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.</u>, 306 S.W.3d 69, 73 (Ky. 2011) (adopting the majority view that claims of faulty workmanship, standing alone, are not "occurrences" under CGL policies). <u>Compare with</u> <u>Auto-Owners Ins. Co. v. Pozzi Window Co.</u>, 984 So. 2d 1241, 1248 (Fla. 2008) (finding a subcontractor's defective installation of windows, which the general contractor did not intend or expect, was an "occurrence" under the CGL policy).

But even courts that find faulty workmanship itself is not an occurrence find that unexpected events resulting from the faulty workmanship can be occurrences. <u>See</u> <u>Travelers Indem. Co. of Am. v. Moore & Assocs., Inc.</u>, 216 S.W.3d 302, 309 (Tenn. 2007) (finding the faulty installation of a window was not an occurrence, but the subsequent water penetration due to the faulty installation was an occurrence); <u>Lamar Homes, Inc. v. Mid-Continent Cas. Co.</u>, 242 S.W.3d 1, 16 (Tex. 2007) (finding "the unexpected, unforeseen or undesigned happening or consequence of the insured's negligent behavior" may constitute an occurrence) (quotation omitted).

The Court concludes that the Nevada Supreme Court would hold that faulty workmanship itself does not fall under the common meaning of an accident, and therefore is not an occurrence. Although not directly addressing this issue, the Nevada Supreme Court has indicated that a negligent act that allows damage to occur does not fall under the commonly understood meaning of an accident in some circumstances. <u>See</u> <u>Fire Ins. Exch. v. Cornell</u>, 90 P.3d 978, 980 (Nev. 2004) (finding that parents' negligent supervision of their adult son was not an accident under the common meaning of the term). Thus, Nevada likely would follow the majority of courts who have held faulty workmanship in and of itself is not an accident.

However, the Court predicts that the Nevada Supreme Court would hold that an unexpected happening caused by faulty workmanship could be an occurrence. An event such as this would fit within the commonly understood meaning of accident, and is in

accordance with Nevada's definition of accident as an unexpected, unforseen, and unintended happening.  Nevada therefore likely would follow the courts which recognize that although faulty workmanship itself is not an accident, the unexpected consequences of that faulty workmanship is an accident.

Here, TIFGT's faulty workmanship was not an accident or occurrence under the Policies.  However, the events of the three stone tiles falling from the building were unexpected, unforseen, and unintended, and come within the plain, ordinary, and common meaning of an accident.  Thus, each stone tile that fell from the building is an occurrence under the Nautilus Policy and the Century Policy.

### B. "Property Damage" Caused by an Occurrence

Nautilus argues damage to the work of another from the repairs necessary to correct an insured's faulty workmanship is not property damage.  Nautilus thus concludes the damage to the stucco substrate is not property damage.  Nautilus further argues that the stucco substrate was defective on its own, independent of any work by TIFGT.   Nautilus also submits Big-D's measures taken to prevent a safety risk are not covered because the Nautilus Policy requires covered property damage apart from the preventative measures.  Nautilus additionally argues there was no loss of use because the IGT building could be used during the repair.

Century contends that incorporation of a defective component into a larger structure does not constitute physical injury unless and until the defective component causes actual harm.  Century also argues that the "rip and tear" damage to the stucco substrate upon removal of the stone tiles is not covered under the Century Policy.  Additionally, Century contends costs incurred to prevent future damage are not covered in the absence of other property damage.  Century further asserts Big-D has failed to provide any evidence of the loss of business or disruption in operations and thus cannot show a loss of use of the IGT building.  Century finally argues Big-D has failed to provide any evidence that the

other subcontractor work sustained water damage.

Big-D responds that it has shown disputed issues of fact as to various different types of property damage.  Big-D argues the faulty installation of the stone tiles caused property damage to the construction project as a whole and to the stucco substrate.  Big-D further argues the repairs and other safety measures taken by Big-D were necessary to prevent imminent safety risks and therefore constitute property damage.  Big-D also argues IGT's loss of use of its front entrance while TIFGT's work was repaired constitutes property damage.  Finally, Big-D argues the water damage to the stucco substrate constitutes property damage.

Both policies define "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured."  (Nautilus Mot. Summ. J., Ex. D at CGL Coverage Form, Sec.V, ¶ 17; Century Mot. Summ. J., Ex. B at 22.)  Costs incurred to prevent future occurrences that may cause damage to property or life may be considered property damage as well.  See U. S. Fid. & Guar. Co. v. Nev. Cement Co., 561 P.2d 1335, 1336-38 (Nev. 1977) (finding the insured should not be penalized for taking measures to prevent the collapse of a building constructed with defective cement, and that the preventative measures were property damage under the policy); see also Desert Mountain Props. Ltd. P'ship v. Liberty Mut. Fire Ins. Co., 236 P.3d 421, 437-38 (Ariz. Ct. App. 2010) (holding preventative measures are covered if the damage intended to be prevented "probably would have occurred during the policy period if the preventative measures had not been performed").  To find otherwise would require the insured to intentionally allow property damage or bodily harm to occur for the damages to be covered.  The reasonable expectations of an insured would be that the policy would cover safety measures taken to prevent further damage to property or life.  See Powell, 252 P.3d at 672 (noting that insurance policies should be read to effectuate the reasonable expectations of the insured).

Here, there was no property damage to the construction project as whole or to the stucco substrate resulting from the faulty installation of the stone tiles.  The installation of the stone tiles is not an occurrence, and therefore cannot cause property damage covered by either Policy.  But even if the faulty installation of the stone tiles was an occurrence, Big-D has presented no evidence that the installation of the stone tiles itself caused any physical injury to the IGT building or the stucco.  The installation also cannot be considered property damage itself because it was not taken to prevent further damage.  The replacement of the stone tiles, as opposed to the removal, also is not a physical injury and was done for aesthetic purposes and not to prevent further damage.  Therefore, the replacement of the stone tile also is not property damage.

However, the actual stone tiles that fell from the building and hit the ground were physically injured.  Therefore, the damage to each stone tile that fell is property damage.  Additionally, the safety measures taken to prevent future property damage or bodily injury caused by additional falling stone tiles are property damage.  This would include the removal, scaffolding, and any other safety measures taken to prevent future bodily injury or property damage.  Big-D also has presented evidence that the stucco substrate was physically injured upon the removal of the stone tiles, and is therefore property damage caused by the stone tiles falling.  (Opp'n to Nautilus Mot. Summ. J., Ex. 1 at 94-95, Ex. 2 at 29, 114.)

Century's argument that the damage to the stucco is uncovered "rip and tear" damage fails.  The cases Century relies on find no occurrence or that damage resulting from repairing defective work is not covered.  See OneBeacon Ins. v. Metro Ready-Mix, Inc., 427 F. Supp. 2d 574, 577 (D. Md. 2006) (no occurrence); Nas Sur. Group v. Precision Wood Prod., Inc., 271 F. Supp. 2d 776, 783 (M.D.N.C. 2003) (no occurrence); Desert Mountain Props. Ltd. P'ship, 236 P.3d at 441-42 (finding removing and repairing non-defective property was not damage caused by the defective work itself but by the repair of

the defective work).  Here, the stone tiles falling were occurrences, and these occurrences caused the physical injury to the stucco because the stone tiles had to be removed from the stucco to prevent property or bodily damage.

Furthermore, the loss of use of the front entrance of the IGT building is property damage.  The front entrance of the IGT building was closed and a side entrance was used to prevent bodily harm to entrants.  Additionally, the Policies include the loss of use of tangible property in the definition of property damage.  Nautilus and Century argue that Big-D has not shown that the entire IGT building could not be used due to the stone tile issues.  But the plain and ordinary meaning of "loss of use" would cover the "loss of use" of an entrance to the building.  The extent of the damages caused by the loss of use is an issue for a fact finder to determine.

Finally, the water damage to the other subcontractor work is property damage. The occurrence is the water migrating under the stone tiles, and thus if this caused physical injury to the other contractors' work, there would be covered property damage.  There is evidence that water had migrated under the stonework and there were pockets of efflorescence between the stone tiles and the substrate.  (Opp'n to Century Mot. Summ. J., Ex. 6 at 48-49, 92, 97-98, Ex. 9 at 129.)  Therefore, taking the evidence in the light most favorable to Big-D, there is a genuine issue of material fact as to whether water intrusion damaged the substrate.

In sum, there are genuine issues of material fact as to whether the damage to the stones that fell, the removal, scaffolding, and other safety measures, the damage to the stucco substrate resulting from the removal, the loss of use of the front entrance, and the water damage constitute property damage under the Policies.  However, the construction project as a whole suffered no property damage and the replacement of the stone tiles is not property damage.  Therefore, the Court will grant summary judgment in favor of Nautilus and Century to the extent Big-D is claiming property damage to the construction project as

a whole and due to the replacement of the stone tiles.  The Court denies summary judgment on any other identified property damage.

### C.  Timing of the Property Damage

Nautilus contends that all of the property damage occurred after the Nautilus Policy ended, because the removal occurred after the third stone fell in December 2008, and because the safety measures were taken after the Nautilus Policy's coverage ended and were not designed to prevent damage that probably would have occurred during the coverage period. Nautilus also argues any loss of use is not covered by the Nautilus Policy because it occurred after the Nautilus Policy ended.

Century argues that the Century Policy does not cover the property damage because there was pre-existing property damage, and the property damage arose out of a construction defect that pre-existed the Century Policy.  Century further argues its Policy does not apply to claims for defective work completed before the policy period.  Century also contends that its Policy precludes coverage for damages occurring after work has been completed or put to its intended use.  Century finally argues that the repair and removal occurred after the Century Policy ended.

Big-D responds that property damage occurred during both policy periods.  Big-D argues the property damage that required the replacement of the stone tiles and the safety measures by Big-D occurred from April 2008 to October 2009.  Big-D further contends the loss of use occurred in April 2008, July 2008, and December 2008.  Big-D finally argues that it is disputed whether TIFGT's work was completed by the date the Century Policy began providing coverage.

### 1.  Property Damage During the Policy Periods

Both Policies cover property damage that occurs during the policy period. (Nautilus Mot. Summ. J., Ex. C at CGL Coverage Form, Sec. I, ¶ 1.b; Century Mot. Summ. J., Ex. B at 41.)  The Nautilus Policy's coverage ended on June 1, 2008.  Big-D presents no

evidence of safety measures or loss of use before June 1, 2008.  Thus, the only property damage that occurred during the Nautilus Policy's coverage period was to the stone that fell in April 2008.

The Century Policy began on June 1, 2008 and ended on February 26, 2009.  The second and third stones fell during this time period, in July 2008 and December 2008, respectively.  The scaffolding and other safety measures were installed sometime after the second stone fell in July 2008, as well as after the third stone fell in December 2008.  (Opp'n to Century Mot. Summ. J., Ex. 1 at 30, Ex. 3 at 25-26.)  The loss of use of the front entrance also occurred after the third stone fell.  (Id., Ex. 4 at 95.)  The water damage was discovered in March 2009, and viewing the evidence and reasonable inferences therefrom in Big-D's favor, the water damage could have occurred during the Century Policy period.  (Id., Ex. 6 at 92, 97-98.)  Additionally, any other property damage, such as any removal work, which occurred between June 1, 2008, and February 26, 2009, would be covered by the Century Policy.

Therefore, the Court will grant summary judgment in favor of Nautilus on this basis except for the damage to the actual stone tile that fell from the building in April 2008.  The Court will deny summary judgment for Nautilus on this basis for the damage which occurred to the stone tile that fell in April 2008.  The Court will grant summary judgment in favor of Century on this basis for the property damage which occurred to the stone that fell in April 2008, and any property damage that occurred after February 26, 2009.  The Court will deny summary judgment to Century on this basis as to all other property damage that occurred between June 1, 2008 and February 26, 2009.

### 2.  Pre-Existing Property Damage

The Century Policy applies to property damage that occurs during the policy period only if the property damage:

> (a) did not first exist, nor is alleged to have existed, in whole or in part, prior to the inception date of this policy; or

(b) was not, nor is alleged to have been, in the process of taking place prior to the inception date of this policy, even if the actual or alleged . . . "property damage" continues during this policy period; or

(c) was not caused, nor is alleged to have been caused, by any construction defect or condition which existed, or is alleged to have existed, prior to the effective date of this policy.

(Century Mot. Summ. J., Ex. B at 41.)

Provision (a) does not apply. The only property damage that occurred before the Century Policy was the damage to the first stone that fell in April 2008. All of the other property damage which occurred is distinct and separate from this first stone falling, and therefore did not exist prior to the Century Policy period.[2] Provision (b) also does not apply because the faulty installation of the tiles is not property damage within the meaning of the Century Policy, and that is the only condition which arguably continued on into the Century Policy period.

There is a genuine issue of material fact as to whether provision (c) precludes coverage. Neither Big-D nor Century disputes that TIFGT inadequately installed the stones, and TIFGT's work therefore may constitute a construction defect or condition. Furthermore, the faulty installation of the stone tiles is the underlying cause of all the property damage, even if the faulty workmanship is not an occurrence under the meaning of the Century Policy.

---

[2]  Century also argues Big-D and TIFGT knew about the stone tile failures prior to the inception of the Century Policy, which precludes coverage. The Century Policy applies to property damage only if prior to the Policy coverage period "no insured [or its employee] knew that the . . . 'property damage' had occurred in whole or in part." (Century Mot. Summ. J., Ex. B at 41.) Big-D and TIFGT knew the first stone fell before the Century Policy's coverage began. However, Century has not presented any evidence that prior to the Century Policy's inception Big-D or TIFGT knew this was more than an isolated incident and that more stone tiles would fall, prompting the removal and other safety measures. Therefore, Century has not established no genuine issue of material fact remains that the knowledge clause in the Century Policy would preclude coverage for Big-D's damages.

To the extent Century contends this construction condition "existed" prior to the Century Policy, Big-D asserts TIFGT's representative, Richard Meyer ("Meyer"), testified at his deposition that TIFGT did not complete its operations by the time the certificate of completion was issued and that TIFGT was working into the fall of 2008.  (Opp'n to Century Mot. Summ. J. at 7.)  Big-D failed to include pages 193-96 of Meyer's deposition testimony in its exhibits, however, Century does not dispute the proffered testimony.  Therefore, the Court will accept Big-D's representation of the testimony, on the condition that Big-D file the deposition testimony with this Court within ten days of the entry of this Order.  The Court therefore will deny summary judgment to Century on this basis.

### 3.  Property Damage After the Work Was Completed or in Use

Big-D was named an additional insured under the Century Policy "with respect to liability for . . . 'property damage'. . . caused, in whole or in part, by" the act or omissions of TIFGT "in the performance of [TIFGT's] ongoing operations" for Big-D.  (Century Mot. Summ. J., Ex. B at 53.)  The Century Policy does not apply to property damage occurring after "that portion of [TIFGT's work] out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor" working on the project.  (Id., Ex. B at 53.)

As noted previously, it is disputed when TIFGT completed the stone installation, and therefore an issue of fact remains as to whether TIFGT's operations were ongoing during the Century Policy period.  Furthermore, the May 19, 2008 certificate of completion alone does not indicate IGT actually occupied the building on that date.  Therefore, an issue of fact remains as to when IGT actually used the building.  Thus, the Court will deny summary judgment to Century on these two bases.

**D.  Exclusions**

"[C]lauses excluding coverage are interpreted narrowly against the insurer."  Powell, 252 P.3d at 672 (quotation omitted).  To prove an exclusion excludes coverage

under a policy, the insurer must 1) "write the exclusion in obvious and unambiguous language," 2) show the insurer's proposed interpretation is the only fair interpretation of the exclusion, and 3) show the exclusion clearly applies to the claim at hand.  Id. at 674.

### 1.  Damage to the Insured's Product

Nautilus and Century argue exclusion k under their respective Policies precludes coverage for any damage to the stone tiles installed by TIFGT because the stone tiles were TIFGT's product.  Big-D responds that exclusion k does not extend to work or services performed by the insured, and Big-D has alleged its damages were caused by TIFGT's work and services, not TIFGT's products.  Big-D also argues this exclusion does not apply because Big-D has not alleged the stones were defective.

Under both policies, exclusion k bars coverage for "property damage" to "your product" arising out of the product or any part of the product.  (Nautilus Mot. Summ. J., CGL Coverage Form, Sec. I, ¶ 2.k; Century Mot. Summ. J., Ex. B at 12.)  "Your product" is defined as "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by [the insured]."  (Nautilus Mot. Summ. J., Ex. C at CGL Coverage Form, Sec. V, ¶ 20.a; Century Mot. Summ. J., Ex. B at 22.)

The plain language of exclusion k contemplates exclusion of property damage to the insured's goods and products, which would include the stone tiles TIFGT installed.  See St. Paul Fire & Marine Ins. Co. v. Sears, Roebuck & Co., 603 F.2d 780, 784 (9th Cir. 1979) (stating this exclusion "clearly precludes any recovery for damages to materials originating from the Named Insured.")  Exclusion k thus bars compensation to Big-D for the property damage to the three stone tiles that fell.

Other than a single tile falling in April 2008, there is no other property damage which occurred during the Nautilus Policy period.  Therefore, the Court will grant summary judgment in favor of Nautilus on Big-D's declaratory judgment and breach of contract claims against Nautilus.  The Court also will grant summary judgment in favor of Century

on this basis for the property damage to the two stones that fell during the Century Policy period.  However, genuine issues of fact remain regarding other property damage during the Century Policy Period, as discussed previously.

## 2.  Damage to Property

Century argues exclusion j(5) of the Century Policy bars coverage for the part of the building on which TIFGT was working when the stone tile fell in April 2008.  Century argues exclusion j(6) of the Century Policy bars coverage for the damage to the stucco substrate resulting from TIFGT's faulty workmanship.  Big-D responds that exclusions j(5) and (6) do not apply because Big-D incurred damages after TIFGT finished work on the wall where the stone fell in April 2008, and the TIFGT work damaged other subcontractor work.

Exclusion j(5) bars coverage for property damage to "that particular part of real property on which you . . . are performing operations, if the 'property damage' arises out of those operations." (Century Mot. Summ. J., Ex. B at 11-12.)  There is a genuine issue of material fact as to when TIFGT completed its work on the IGT building, and therefore issues of fact remain as to whether this exclusion applies.

Exclusion j(6) bars coverage for property damage to "that particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." (Century Mot. Summ. J., Ex. B at 11-12.)  This exclusion does not apply to property damage included in the "products-completed operations hazard." (Id., Ex. B at 12.)  The "products-completed operations hazard" includes property damage arising out of TIFGT's product or completed work.  (Id. at 22.)  Work is deemed completed "when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor" working on the same project. (Id.)

///

This exclusion may exclude coverage for property damage to the stucco substrate resulting from the removal of TIFGT's work, to the extent the damage occurred before the Century Policy ended.  However, there is a genuine issue of material fact as to when TIFGT's work was completed or put to its intended use.  Therefore, whether and to what property damage this exclusion may apply is an issue of fact that must be resolved by a fact finder.  The Court therefore will deny summary judgment to Century on the basis of exclusions j(5) and (6).

### 3.  Damage to the Insured's Work

Century argues exclusion l bars coverage for any damage arising out of TIFGT's faulty work.  Big-D responds that exclusion l does not apply because Big-D has alleged damages other than just to the TIFGT work.

Exclusion l of the Century Policy excludes from coverage property damage to TIFGT's work arising out of TIFGT's work or any part of TIFGT's work and included in the products-completed operations hazard.  (Century Mot. Summ. J., Ex. B at 12.)  As noted previously, there is a genuine issue of material fact as to when the TIFGT work was completed and when it was put to its intended use by IGT.  Therefore, issues of fact remain as to whether this exclusion applies to bar coverage, and the Court will deny summary judgment to Century on this basis.

**E.  Notice of Claim**

Century argues Big-D did not provide Century with immediate notification of the claim, and the notice it did provide was insufficient, and therefore did not comply with the notice condition of coverage in the Century Policy.  Big-D responds that Century had notice of Big-D's claims shortly after Big-D became aware of them, and Century had sufficient notice to investigate.

The Century Policy states that if an occurrence occurs or a claim is brought against any insured, the insured must notify Century "as soon as practicable."  (Century

Mot. Summ. J., Ex. B at 18.)  "As soon as practicable" means "notice within a reasonable length of time under all the facts and circumstances of each particular case."  Am. Fid. Fire Ins. Co. v. Adams, 625 P.2d 88, 89 (Nev. 1981) (quotation omitted) (finding the "as soon as practicable" requirement met when the insured gave notice seven months after the accident based on a good faith belief that no action would be filed against the insured).  For an insurer to deny coverage due to late notice, the insurer must show the notice was late and the delay materially impaired the insurer's ability to contest liability.  Las Vegas Metro. Police Dep't v. Coregis Ins. Co., 256 P.3d 958, 965 (Nev. 2011).

There is a genuine issue of material fact as to whether Big-D's notice was late, and whether Century was prejudiced by any delay in notice.  Big-D has presented evidence that when the first stone tile fell it was unclear whether this was going to be a continuing problem, and the stone tile issues progressively worsened over time.  (Opp'n to Century Mot. Summ. J., Ex. 2 at 23-25, 28-30.)  Furthermore, Big-D has presented evidence that the decision to remove all of the stone tiles was not made until after the third stone tile fell in December 2008.  (Id., Ex. 3 at 62-63.)  Big-D also has presented evidence that Century was sent notice that stones were falling off the IGT building on April 20, 2009, and the next day Big-D filed suit against IGT to obtain the payments IGT was withholding due to the stone issues.  (Century Mot. Summ. J., Exs. C & R.)  Century denied coverage based on its assessment that TIFGT completed its work before the Century Policy began and that other exclusions applied, and Century has not shown its determination would have been affected by earlier notice of the claim.  (Id., Ex. K.)  The Court will deny summary judgment to Century on this basis.

### F.  Consent for the Settlement

Century argues Big-D did not obtain Century's consent for the settlement with IGT, and therefore the settlement is not covered by the Century Policy.  Big-D responds that giving Century notice of the settlement would have been futile because Century denied

coverage before Big-D finally settled with IGT.

The Century Policy states "[n]o insured will, except at that insured's own cost, voluntarily make a payment . . . without [Century's] consent." (Century Mot. Summ. J., Ex. B at 18); see also Las Vegas Star Taxi, Inc. v. St. Paul Fire & Marine Ins. Co., 714 P.2d 562, 564 (Nev. 1986) (finding the insured's failure to give notice of the claim until ten days before trial and then settling without the insurer's consent barred coverage). However, courts have held that when an insurer wrongfully denies coverage and the insured subsequently settles without insurer's consent, the insurer cannot invoke a "no voluntary payments clause in the policy." See Cmty. Title Co. v. Safeco Ins. Co. of Am., 795 S.W.2d 453, 461 (Mo. Ct. App. 1990) (listing various jurisdictions that have ruled similarly). Nevada recognizes a similar rule as a matter of general contract law. Thornton v. Agassiz Constr., Inc., 799 P.2d 1106, 1108 (Nev. 1990); Bradley v. Nevada-California-Oregon Ry., 178 P. 906, 908 (Nev. 1919) ("[T]he party who commits the first breach of a contract cannot maintain an action against the other for a subsequent failure to perform.").

Issues of fact remain as to whether Century wrongfully denied Big-D's claim. Therefore, issues of fact remain as to whether Big-D's noncompliance with the voluntary settlement clause precludes coverage, and the Court will deny summary judgement on this basis.

### G. Century's Duty to Indemnify

Century argues that it had neither a duty to defend nor indemnify Big-D for its damages related to TIFGT's stone work issues. Century contends it had no duty to defend Big-D because there was no suit against Big-D. Century further argues the duty to defend is broader than the duty to indemnify, so if there is no duty to defend there can be no duty to indemnify. Century also argues that Big-D was not legally obligated to pay damages to IGT because there was no underlying court action which found Big-D liable for damages, so Century had no obligation to indemnify Big-D.

Big-D responds that the duty to defend is broader than the duty to indemnify in the sense that the insurer must defend if the complaint pleads facts on which coverage would be triggered, regardless of whether the damages are actually covered.  Big-D argues it did not make any claim against Century triggering its duty to defend.  Therefore, Big-D argues the lack of a duty to defend has no bearing on Century's duty to indemnify.  Big-D further argues it had a legal obligation to IGT under the construction contract, and Big-D paid damages arising out of this legal obligation in the form of the settlement with IGT and the remediation work related to the stone tiles.  Big-D contends this triggered Century's duty to indemnify.

The Century Policy states Century will indemnify the insured for "those sums that the insured becomes legally obligated to pay as damages."  (Century Mot. Summ. J., Ex. B at 8.)  For a duty to indemnify to arise, "the insured's activity and the resulting loss or damage [must] actually fall within the CGL policy's coverage."  United Nat'l Ins. Co. V. Frontier Ins. Co., Inc., 99 P.3d 1153, 1158 (Nev. 2004) (quotation omitted).

The Nevada Supreme Court has not addressed whether an insured can be "legally obligated to pay as damages" an amount stemming from an existing contractual obligation in the absence of a judgment.  Again, the Court must predict what the Nevada Supreme Court would do.

Some courts find the term "legally obligated to pay as damages" under a CGL policy requires a final judgment or a settlement as a result of a suit.  See Builders Mut. Ins. Co. v. Dragas Mgmt. Corp., 793 F. Supp. 2d 785, 794-97 (E.D. Va. 2011) (listing multiple jurisdictions that have ruled similarly), vacated on other grounds, _ _ _ F. App'x _ _ _ _, 2012 WL 5861255 (4th Cir. Nov. 20, 2012); Certain Underwriters at Lloyd's of London v. Superior Court, 24 Cal. 4th 945, 960 (2001) ("[T]he insurer's duty to indemnify the insured for 'all sums that the insured becomes legally obligated to pay as damages' under the standard [CGL] insurance policy is limited to money ordered by a court.").  These courts

reason that "sums the insured becomes legally obligated to pay" is followed by the phrase "as damages," and this presupposes that a court has ordered damages.  Certain Underwriters, 24 Cal. 4th at 963.

Other courts have found an insured may be "legally obligated to pay as damages" a sum in the absence of a lawsuit or a court order requiring the insured to make the payment.  See Desert Mountain Props. Ltd. P'ship, 236 P.3d at 427-28 (citing cases that have ruled similarly).  These courts reason that although a court may enforce a legal obligation, court action is not necessarily required to create a legal obligation.  Id. at 428. At least one court has held "legally obligated to pay as damages" would cover a legal obligation to pay a sum arising from a contract.  See id. at 428-29.

The Nevada Supreme Court has used language in some of its opinions which suggest there can be no legal obligation to pay a sum as damages without a judgment.  See United Servs. Auto. Ass'n v. Crandall, 594 P.2d 704, 706 (Nev. 1979) (finding insurer had a duty to defend "and, to the extent of policy limits, pay any judgment entered against [the insured]"); Roberts v. Farmers Ins. Co., 533 P.2d 158, 159 (Nev. 1975) (finding the rights of a third party, who was suing the insured regarding an automobile accident, "will not mature until [the third party] first has recovered a judgment against the insured"). However, the Nevada Supreme Court was not confronted in these cases with the specific issue of whether other sources of legal obligations could fall within the policy language.

The Court concludes if the Nevada Supreme Court addressed this issue, it would find that a legal obligation to pay a sum as damages would include sums due as a legal obligation under a contract.  Under Nevada law, insurance contracts must be interpreted according to the plain meaning of the words in the policy and from the viewpoint of a person untrained in the law, and any ambiguities must be construed in favor of the insured. Fourth St. Place, 270 P.3d at 1239; Benchmark Ins. Co., 254 P.3d 621.  The phrase "those sums that the insured becomes legally obligated to pay as damages" is ambiguous.  To one

trained in the law the phrase "as damages" may signify an amount ordered by a court, but a lay person would not necessarily make this same assumption.  A lay person may conclude the language would include coverage for sums due to fulfill a legal obligation under a contract.  Therefore, under the Century Policy, the duty to indemnify may be triggered absent a court order or judgment making the insured liable for damages, and could include amounts the insured was legally obligated to pay due to contractual obligations.

Century does not dispute that Big-D was contractually obligated to attempt to remediate and ultimately pay IGT, in the form of an offset from the original contract price, for the failures in the installation of the stone tiles.  Big-D has presented evidence that under the construction contract with IGT, Big-D was required to "deliver[] the product to specification."  (Opp'n to Century Mot. Summ. J., Ex. 4 at 95-96.)  Thus, there is a genuine issue of material fact as to whether Big-D was legally obligated to pay the sums associated with the remediation and repair as damages, and consequently whether Century owed Big-D a duty to indemnify.[3]  The Court will deny Century's Motion on this basis.

## IV.  UNFAIR INSURANCE CLAIMS PRACTICES (COUNTS 6-7)

Nautilus moves for summary judgment on Big-D's claims of unfair insurance practices against Nautilus.  Nautilus argues it timely and properly investigated Big-D's claim, and communicated its position appropriately, and thus did not engage in any unfair claims practices.  Nautilus further contends Big-D never directly sent Nautilus notice of the

---

[3] In its Reply, Century argues the Century Policy excludes coverage for property damage "for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." (Century Mot. Summ. J., Ex. B at 9.) This term is ambiguous.  It could exclude coverage for Big-D's damages arising from the assumption of any contractual liability. See Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London, 327 S.W.3d 118, 124, 127 (Tex. 2010).  It also could be interpreted to apply to an assumption by the insured of liability of a third party.  See Broadmoor Anderson v. Nat'l Union Fire Ins. Co. of La., 912 So. 2d 400, 407 (Ct. App. La. 2005); Am. Family Mut. Ins. Co. v. Am. Girl, Inc., 673 N.W.2d 65, 80-81 (Wis. 2004) (noting "assumption" must be interpreted to add something to the exclusion).  Construing this exclusion against Century, this exclusion applies to the assumption by the insured of the liability of a third party, and does not bar coverage for Big-D's damages.

IGT claim, which precludes a finding that Nautilus committed unfair claims practices. Finally, Nautilus argues its liability was not reasonably clear so Nautilus was not required to effectuate a settlement.

Century also moves for summary judgment on Big-D's claims of unfair insurance practices against Century. Century argues that it reasonably handled Big-D's claim because it attempted to gather as much information as it could from TIFGT and Big-D, and it denied coverage based on Big-D's own lawyer's assertions. Century also argues a failure to investigate is relevant only when the investigation would have revealed facts in favor of coverage, and further investigation would have shown the claim was not covered.

Big-D responds that genuine issues of material fact preclude summary judgment on its unfair insurance practices claims against both insurers. Big-D argues Nautilus delayed in responding to the claim, failed to obtain any experts or investigate, failed to affirm or deny coverage for over a year, failed to effect settlement, caused Big-D to file suit due to the lack of a coverage decision, and failed to provide an adequate basis for reserving its rights or denying coverage. Big-D argues Century failed to adequately investigate or make a prompt coverage decision despite Big-D's repeated requests to do so.

Nevada Revised Statutes § 686A.020 prohibits engaging in "an unfair or deceptive act or practice in the business of insurance." Failing to promptly communicate, affirm or deny within a reasonable time, or explain the basis for a denial of coverage are all evidence of unfair claims practices. Estate of Lomastro ex rel. Lomastro v. Am. Family Ins. Group, 195 P.3d 339, 351-52 (Nev. 2008) (finding genuine issues of material fact when the insurer did not promptly respond to the insured's communications, investigated the claim for ten months without affirming or denying coverage, and gave an insufficient explanation in denying the claim); Albert H. Wohlers & Co. v. Bartgis, 969 P.2d 949, 961 (Nev. 1998) (finding unfair practices where the insurer acted unreasonably in denying the claim through an absurd interpretation of the policy and failed to offer a reasonable explanation for the

denial of coverage).  Section 686A.020 does not require that an insurer breach its duties under the insurance contract to be liable for unfair claims practices.  See Zurich Am. Ins. Co. v. Coeur Rochester, Inc., 720 F. Supp. 2d 1223, 1236 (D. Nev. 2010) (noting § 686A.020 "address[es] the manner in which an insurer handles an insured's claim" regardless of whether the claim is denied" (quotation omitted)).

Nautilus argues it cannot be liable for unfair claims practices because Big-D itself never provided Nautilus with notice of the claim.  However, it is undisputed that Travelers gave Nautilus notice of the claim, and Nautilus cites no authority showing this would be insufficient to put Nautilus on notice of the claim.  The Court will therefore deny summary judgment to Nautilus on this basis.

Nevertheless, summary judgment is warranted on four of Big-D's claims of unfair insurance practices against Nautilus and Century.  Big-D has presented no evidence that Nautilus or Century misrepresented any pertinent facts or insurance policy provisions relating to any coverage at issue.  Big-D also has presented no evidence that Nautilus or Century failed to adopt and implement reasonable standards for the prompt investigation and processing of claims.  Big-D also presented no evidence that this litigation was compelled by Nautilus or Century offering Big-D less than Big-D ultimately retained under either policy.   Furthermore, Nautilus is not liable for the claim, and therefore did not fail to effectuate prompt, fair and equitable settlements of claims in which Nautilus's liability had become reasonably clear.  Furthermore, because there are genuine issues of material fact as to whether Century is liable to Big-D for certain property damage, Century did not fail to effectuate prompt, fair and equitable settlements of claims in which Century's liability had become reasonably clear.  Therefore summary judgment is granted in favor of Nautilus and Century on these four unfair insurance practices claims.

However, Big-D has shown genuine issues of material fact remain with respect to the rest of its unfair insurance practice claims.  There is evidence that Nautilus may have

had notice of the claim by April 2009, but did not respond until July 2009 after a second notice.  (Nautilus Mot. Summ. J., Exs. U & W.)  Nautilus had not issued a coverage decision as of the time Big-D filed this action even though Big-D sent Nautilus a copy of Big-D's job file for TIFGT's work and photographs from the site, and Travelers indicated the reason for the delay in getting the invoices outlining the damage and costs to repair to Nautilus was due to Nautilus's delay in requesting them.  (Id., Exs. Z & AA.)  Additionally, there is no evidence that Nautilus did anything on the claim from July 2009 until February 2010, or that Nautilus ever hired an expert or conducted an independent investigation of the claim.

As to Century, Century responded to Travelers's notice of the claim in just over a month by requesting documents.  (Century Mot. Summ. J., Ex. E.)  However, Big-D has presented evidence that Century did not hire an independent investigator until almost ten months after this initial correspondence.  (Opp'n to Century Mot. Summ. J., Ex. 7 at 39.) Big-D also has presented evidence undermining Century's independent investigation on which it based its coverage denial: the investigation took 2.5 hours and consisted of calling one person and obtaining a copy of the certificate of completion for the IGT building.  (Id.) Additionally, Century did not issue its disclaimer of coverage until June 2010, over a year after Travelers gave Century notice of the IGT claim.  Big-D also has presented evidence raising an issue of fact that further investigation may have shown Century was liable, as there are genuine issues of material fact as to whether the Century Policy covers the property damage at issue.

Thus, genuine issues of material fact remain as to whether Nautilus and Century failed to: acknowledge and act reasonably promptly upon communications with respect to the claim; affirm or deny coverage of the claim within a reasonable time after proof of loss requirements had been met; and provide promptly to Big-D a reasonable explanation of the basis in the policy for the denial of the claim.  Therefore, the Court will deny summary

judgment on these three claims of unfair insurance practices against Nautilus and Century.

**V. CONCLUSION**

IT IS THEREFORE ORDERED that Defendant Nautilus Insurance Company's Motion for Summary Judgment (Doc. #41) is hereby GRANTED in part and DENIED in part. The Motion is DENIED with respect to the three noted claims of unfair insurance claims practices, and GRANTED in all other respects.

IT IS FURTHER ORDERED that Defendant Century Surety Company's Motion for Summary Judgment (Doc. #55) is hereby GRANTED in part and DENIED in part as set forth more specifically in this Order.

IT IS FURTHER ORDERED that Plaintiff Big-D Construction Corp.'s Motion to Strike Exhibits Offered in Defendant Century Surety Company's Motion for Summary Judgment (Doc. #61) is hereby DENIED.

IT IS FURTHER ORDERED that Plaintiff Big-D Construction Corp. file within ten days of the entry of this Order pages 193-96 of Richard Meyer's deposition.

DATED: January 22, 2013

_____
PHILIP M. PRO
United States District Judge