CHRISTOPHER M. AMEN, ESQ.
Nevada Bar No. 6880
ANDRE V. FARINHA, ESQ.
Nevada Bar No. 10035
LEWIS BRISBOIS BISGAARD & SMITH LLP
6385 S. Rainbow Boulevard, Suite 600
Las Vegas, Nevada 89118
Tel: 702.893.3383
Fax: 702.893.3789
E-Mail: camen@lewisbrisbois.com
E-Mail: afarinha@lewisbrisbois.com

Attorneys for Defendant
TAKE IT FOR GRANITE TOO

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA, CENTRAL DISTRICT**

| | |
|---|---|
| BIG-D CONSTRUCTION CORP., a Utah corporation,<br><br>Plaintiff,<br><br>v.<br><br>TAKE IT FOR GRANITE TOO, a Nevada corporation; CENTURY SURETY COMPANY, an Ohio corporation; NAUTILUS INSURANCE COMPANY, an Arizona corporation; ROE CORPORATIONS I through X, and ZOE INSURANCE COMPANIIES I through X, inclusive,<br><br>Defendants. | CASE NO. 2:11-CV-00621-PMP-PAL<br><br>**ORDER GRANTING TAKE IT FOR GRANITE TOO'S EMERGENCY MOTION TO DEEM THE SETTLEMENT AND RELEASE AGREEMENT SIGNED BY TAKE IT FOR GRANITE TOO** |

**INTRODUCTION**

Before this Court is Defendant Take It For Granite Too's ("TIFGT"), Emergency Motion to Deem the Settlement Agreement and Release Signed by TIFGT (ECF No. 109) (the "Motion"). The Motion came on for hearing via telephonic conference on the 22nd day of August, 2013, during the

Court's previously scheduled status hearing to discuss the progress of finalizing the settlement reached in this matter.

Plaintiff BIG-D CONSTRUCTION CORPORATION appeared by and through its attorney Melissa Buetler, Esq. of the law firm Holland & Hart LLP; Defendant CENTURY SURETY COMPANY appeared by and through its attorney Gena Sluga, Esq. of the law firm Christian, Kravitz, Dichter, Johnson, & Sluga, LLC; Defendant NAUTILUS INSURANCE COMPANY appeared by and through its attorney Theodore Kurtz, Esq. of the law firm Selman Breitman LLP; Defendant TAKE IT FOR GRANITE TOO appeared by and through its attorney Christopher M. Amen, Esq. of Lewis Brisbois Bisgaard & Smith, LLP; with the Honorable Peggy A. Leen presiding. Having reviewed the papers and pleadings on file herein, heard oral arguments and noting no opposition to the Motion, this Court makes the following Findings of Fact and Conclusions of Law and Order:

**FINDINGS OF FACT**

1. On March 9, 2011, Big-D Construction Corporation filed a Complaint entitled *Big-D Construction Company v. Take It For Granite Too, Inc. et al.* in Nevada's Eighth Judicial District Court, Case No. A-11-636654-B, against TIFGT, Century Surety Company, and Nautilus Insurance Company asserting claims for relief for (1) Breach of Contract against TIFGT; (2) Negligence against TIFGT; (3) Indemnity against TIFGT; (4) Declaratory Judgment against Century;(5) Declaratory Judgment against Nautilus; (6) Breach of Insurance Contract against Nautilus and Century; and (7) Violation of NRS 686A.310 against Nautilus and Century (the "Subject Action").

2. The Subject Action pertains to claims of alleged deficiencies related to the installation of exterior and interior stone veneer (the "TFIGT Work") at the International Game Technologies, Inc. building located in Las Vegas, Nevada (hereinafter the "Subject Property").

3. On or about April 21, 2011, the Subject Action was removed to the United States District Court, District of Nevada, Case No. 2:11-cv-00621-PMP-PAL pursuant to a Petition for Removal of Action Under 28 U.S.C 1441 filed by Nautilus Insurance Company.

4. TIFGT is no longer in business and its corporate charter has been revoked by the Nevada Secretary of State.

5. On July 18, 2013, the parties to this litigation, including TIFGT, attended a Mandatory Settlement Conference with United States Magistrate Judge, Peggy Leen. With respect to TIFGT specifically, counsel for TIFGT attended the Mandatory Settlement Conference with TIFGT's former President, Richard Meyer, and TIFGT's insurance representative, Gregory Fruhauff.

6. At the conclusion of the Mandatory Settlement Conference, the parties reached a settlement as to all claims arising out of or related to the Subject Action, the Subject Property and TIFGT's Work with the exception of the following: (i) Nautilus reserved its rights to pursue Century for the costs and fees incurred defending TIFGT in the Subject Action and any associated or related damages, and (ii) Century reserved its rights to defend any future action brought by Nautilus for the same.

7. Both Mr. Meyer as a former officer of TIFGT and counsel for TIFGT agreed to the following essential and material terms which were memorialized with counsel and the parties (including Mr. Meyer) in chambers and further memorialized in this Court's Minutes of Proceedings dated July 18, 2013 (ECF No. 106):

a. Century will pay Big-D $400,000 on behalf of its insured, Take It for Granite Too and itself to globally resolve all claims related to this lawsuit;

b. Nautilus will pay Big-D $10,000 pursuant to the terms of the parties' earlier settlement agreement;

c. The parties will execute a release of all claims related to this lawsuit; however, Nautilus reserves its rights to pursue equitable contribution of the costs and fees to defend TIFGT against Century for claims arising out of this lawsuit, and Century reserves its rights to defend any future action brought by Nautilus for equitable contribution;

d. The parties will execute a stipulation for dismissal with prejudice with each side to bear its own attorneys fees and costs;

e. Settlement proceeds shall be tendered to Big-D within 30 days of the settlement conference.

7. Subsequent to reaching settlement, the parties prepared a mutually agreeable Settlement and Release Agreement which included the essential and material terms agreed to at the July 18th, 2013 Mandatory Settlement Conference and memorialized in this Court's Minutes of Proceedings dated July 18th, 2013 (See Exhibit A).

8. On or about August 15th, 2013, Mr. Meyer advised counsel that he was not willing to execute the Settlement and Release Agreement on behalf of TIFGT.

9. On August 21st, 2013, counsel for TIFGT filed the instant Motion.

10. At the August 22, 2013 hearing on the Motion, all parties advised the Court there was no opposition or objection to the Motion. There being no objection, the Court requested counsel for TIFGT to seek written authority from Mr. Meyer authorizing counsel to execute the Settlement and Release Agreement on behalf of TIFGT. Counsel for TIFGT did so but received no written response.

11. Given Mr. Meyer's unwillingness to execute the Settlement and Release Agreement on behalf of TIFGT, the parties are unable to obtain full and final relief without an Order from this Court despite all parties agreeing to the essential and material terms of the settlement. As a result, counsel for TIGFT filed the instant Motion (ECF No. 109) seeking an order from the Court deeming the Settlement and Release Agreement fully executed by TIFGT.

///

///

///

///

## CONCLUSIONS OF LAW

1. "Because a settlement contract is formed when the parties have agreed to its material terms, even though the exact language is finalized later, a party's refusal to later execute a release document after agreeing upon the releases' essential terms does not render the settlement agreement invalid." *May v. Anderson*, 121 Nev. 668, 670 (Nev. 2005). Moreover, "[i]n the case of a settlement agreement, a court cannot compel compliance with material terms remain uncertain. The court must be able to ascertain what is required of the respective parties." *Id.* This Court concludes that, in this case, both counsel and party representatives – including Mr. Meyer on behalf of TIFGT -- discussed and agreed to the essential and material terms of the Settlement and Release Agreement. Therefore, Mr. Meyer's refusal to execute the Settlement and Release Agreement does not render the agreement invalid.

2. The Federal Rules of Civil Procedure promotes just, speedy and inexpensive determination of every action and proceeding. FRCP 1, states in pertinent part:

> [The Rules of Federal Civil Procedure] should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding

Additionally, a court of equity has the "inherent authority to provide themselves with appropriate instruments required for the performance of their duties." *Ex Parte Peterson, as Receiver of the Intestate Coal Company*, 253 U.S. 300, 312 (1920). "Unless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that power." *Porter v. Warner Holding Co*., 328 U.S. 395, 398 (1946).

In the instant case, this Court concludes that it is within this Court's authority to grant the requested Order pursuant to its inherent equitable powers and to promote the intent of FRCP 1. Otherwise, the parties would be unable to obtain the full and final relief bargained for and agreed to by all parties.

3. This Court further concludes it has authority to grant the Motion given no party expressed an opposition or objection to the Motion. See LR 7-2(d).

**ORDER**

Accordingly, based upon the foregoing Findings of Fact and Conclusions of Law:

**IT IS HEREBY ORDERED** Defendant Take It For Granite Too's Emergency Motion to Deem the Settlement and Release Agreement Signed by TAKE IT FOR GRANITE TOO (ECF No.109) is hereby GRANTED.

**IT IS FURTHER ORDERED** the Settlement and Release Agreement is deemed fully executed by Defendant TAKE IT FOR GRANITE TOO.

DATED this 23 day of August, 2013.

Peggy A. Leen
United States Magistrate

Respectfully Submitted By:

LEWIS BRISBOIS BISGAARD & SMITH LLP

CHRISTOPHER M. AMEN, ESQ.
Nevada Bar No. 006880
ANDRE V. FARINHA, ESQ.
Nevada Bar No. 10035
6385 South Rainbow Boulevard, Suite 600
Las Vegas, Nevada 89118

Attorneys for Defendant
TAKE IT FOR GRANITE TOO

# EXHBIT A

# SETTLEMENT AND RELEASE AGREEMENT

This Settlement Agreement and Release Agreement (hereinafter "**Agreement**") is entered into and made effective as of the last date of execution identified on the signature pages exchanged by and between the parties hereto (the "Effective Date") and is made by and between Big-D Construction Corporation (hereinafter "**Big-D Construction**") and Take It For Granite Too, Inc. (hereinafter "**TIFGT**"), Century Surety Insurance Company (hereinafter "**Century**"), and Nautilus Insurance Company (hereinafter "**Nautilus**"), including their agents, employees, predecessors, successors, affiliates, subsidiaries, parents, employees and assigns, insurers, attorneys and representatives. **Big-D Construction, TIFGT, Century and Nautilus** may be collectively referred to as "**Settling Parties**").

## I. RECITALS

This **Agreement** is made with reference to the following facts:

A. On March 9, 2011, Big-D Construction filed a Complaint entitled *Big-D Construction Company v. Take It For Granite Too, Inc. et al.* in Nevada's Eighth Judicial District Court, Case No. A-11-636654-B, against **TIFGT**, **Century** and **Nautilus** asserting claims for relief for (1) Breach of Contract against TIFGT; (2) Negligence against TIFGT; (3) Indemnity against TIFGT; (4) Declaratory Judgment against Century;(5) Declaratory Judgment against Nautilus; (6) Breach of Insurance Contract against Nautilus and Century; and (7) Violation of NRS 686A.310 against Nautilus and Century (hereinafter the **"Subject Action"**). The **Subject Action** pertains to claims of alleged deficiencies related to the installation of exterior and interior stone veneer (the "TFIGT Work") at the International Game Technologies, Inc. building located in Las Vegas, Nevada (hereinafter the **"Subject Property"**).

B. On or about April 21, 2011, the **Subject Action** was removed to the United States District Court, District of Nevada, Case No. 2:11-cv-00621-PMP-PAL pursuant to a Petition for Removal of Action Under 28 U.S.C 1441 filed by **Nautilus**.

C. On April 26, 2011, **Nautilus** filed its Answer to Big-D Construction's complaint.

D. On April 28, 2011, **Century** filed its Answer to Big-D Construction's complaint.

E. On May 12, 2011, **TIFGT** filed its Answer to Big-D Construction's complaint.

F. On our about March 27, 2013, **Big-D Construction** and **Nautilus** reached a settlement in the **Subject Action** the terms of which were memorialized in a General Release Agreement attached hereto as Exhibit A and incorporated herein by reference (hereinafter the "**Nautilus Settlement**").

G. On July 18, 2013, the **Settling Parties** attended a Mandatory Settlement Conference with United States Magistrate Judge, Peggy Leen. At the conclusion of the Mandatory Settlement Conference, the **Settling Parties** reached a settlement as to all claims arising out of or related to the **Subject Action** and the **Subject Property** with the exception of the following: (i) Nautilus reserved

its rights to pursue Century for the costs and fees incurred defending TIFGT in the Subject Action and any associated or related damages, and (ii) Century reserved its rights to defend any future action brought by Nautilus for the same (hereinafter the "**Nautilus Claims**")

F.      By entering into this **Agreement** the **Settling Parties** acknowledge that the **Subject Action** involves disputed facts and issues, and the **Settling Parties** do not admit the truth or sufficiency of any claims, allegations or defenses asserted against any settling party. **Settling Parties** expressly agree that settlement of these claims should not be construed as an admission of liability by any party. The **Settling Parties** intend by this **Agreement** to settle all claims, demands, actions, and causes of action brought or that could have been brought in the **Subject Action** with the exception of the **Nautilus Claims**.

NOW, THEREFORE, in consideration of the foregoing facts, consideration, and other terms and conditions as more thoroughly set forth below, the **Settling Parties** hereby mutually agree as follows:

## II.      DEFINITIONS

A.      "**Claim**" or "**Claims**" shall refer to any and all claims, demands, liabilities, damages, complaints, causes of action, intentional and negligent acts, intentional or negligent omissions, misrepresentations, breach of contract, breach of warranty, express indemnity, equitable and implied indemnity, economic damages, non-economic damages, property damage, diminution of value, repair costs, out of pocket expenses, loss of use, attorneys' fees, expert fees, repair costs, investigative costs, interest and/or prejudgment interest, litigation costs and any other actionable omissions, conduct or damage of every kind and nature whatsoever, whether seen or unforeseen, whether known or unknown, which now exists, has ever existed or hereafter may exist, relating to or arising out of the TIFGT Work at the **Subject Property**, the **Subject Action**, and/or the planning, development, design, engineering, construction, supervision, materials, repair, or use of the **Subject Property**. The **Nautilus Claims** are expressly excluded from the definition of **Claim** or **Claims**.

B.      "Related Persons and Entities" shall refer to any and all past, present and future parent companies, divisions, subsidiaries, affiliates, related corporations and entities, members, stock holders, directors, officers, employees, agents, insurers, third-party administrator for any insurer, sureties, attorneys, experts, consultants, designers, lenders, mortgage holders, predecessors, partners, joint ventures, legal representatives, heirs, administrators, trustors, trustees, beneficiaries, creditors, assigns, successors, lessees, tenants, and legal and equitable owners as applicable to the **Settling Parties**, and the Related Persons and Entities of these persons or entities.

## III.      SETTLEMENT TERMS

A.      In exchange for the consideration referred to herein, **Settling Parties**, on behalf of themselves, and their Related Persons and Entities, do hereby agree to do the following:

B.      In consideration of the Release set forth below, **Big-D Construction** is to be paid by **Century** a total settlement amount of Four Hundred Thousand Dollars and Zero Cents ($400,000.00) on behalf of its insured, **TIFGT,** and **Century**.

C. In consideration of the release set forth in the **Nautilus Settlement** and pursuant to the terms thereof, **Big-D Construction** has received payment from **Nautilus** in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00).

D. Settlement payments shall made payable to "Big-D Construction Corp. " (Tax ID No.: 87-0361918). All settlement funds are due to **Big-D Construction** within two days after execution of the Agreement by Big-D.

E. The Settling Parties have authorized Holland & Hart LLP to electronically file the Stipulation and Order to Dismiss with Prejudice in the form attached hereto as **Exhibit B** upon (i) execution of the Agreement and (ii) **Big-D Construction**'s confirmation of receipt of good funds for all settlement payments. Subject to the outstanding **Nautilus Claims**, each party shall bear its own attorneys fees and costs.

## IV. RELEASES

A. Big-D Construction, TIFGT and Century. Each **Big-D Construction**, **TIFGT** and **Century** on its own behalf and on behalf of its Related persons or Entities, to the full extent of its legal standing and authority, hereby fully and finally settles, releases, acquits, forever discharges and covenants not to sue any other Settling Party and their Related Persons and Entities as to any and all **Claims** made or that could have been made in the **Subject Action**, or any causes of action of any nature and kind arising out of or related to the **Subject Action** or concerning the **Subject Property** or arising out of the TIFGT Work. This **Agreement** may be plead as a full and complete defense to any such action or other proceeding as well as a basis for abatement of, or injunction against, such action or other proceeding.

B. Nautilus and Big-D Construction. The terms of the **Nautilus Settlement** attached hereto as Exhibit A and incorporated herein by reference shall govern terms of the settlement and the scope of the release as between **Nautilus** and **Big-D Construction**.

C. **Settling Parties** acknowledge and understand that there is a risk that now or subsequent to the execution of this **Agreement**, they may have claims arising out of issues set forth above which are unknown and unanticipated, at the time this **Agreement** is signed, and that any claims as are known or should be known may become more serious than they now expect or anticipate. Nevertheless, **Settling Parties** hereby expressly waive and release any and all rights they may have in such unknown and unexpected consequences or results, except for the **Nautilus Claims** that are expressly excluded from this release.

## V. MISCELLANEOUS

A. Prior Assignments & Warranty of Authorized Signatures: Each of the **Settling Parties** represents and warrants that they are the sole owners of the **Claims** released and that such Claims have not been assigned, transferred, or hypothecated, whether voluntarily or involuntarily, by subrogation, operation of law or otherwise, to any person or entity. Each of the signatories hereto warrant and represents that he or she is competent and authorized to enter into this **Agreement** on

behalf of the party for whom he or she purports to sign. Any counsel signing on behalf of a client represents and warrants that he or she has the full authority to resolve the dispute among the **Settling Parties** on the terms set forth in this **Agreement**, including the specific releases set forth above, on behalf of the client.

B. Repairs and Handling of Settling Rights and Amounts: **TIFGT, Nautilus and Century** do not bear any further responsibility whatsoever as to the redesign, repair, remediation, corrective work and/or maintenance of the **Subject Property** or to determine how the settlement amount shall be divided, distributed, or spent, or to remedy any of the **Claims** released.

C. Representations: The **Settling Parties** make the following material representations with the understanding that each of them enters into this **Agreement** in reliance upon each of these representations, and without these representations, none of them would enter into this **Agreement**:

a. The **Settling Parties** intend that the terms and conditions of this **Agreement** and the **Agreement** as a whole, shall be binding upon them and their Related Persons and Entities.

b. The **Settling Parties** have not sold, transferred, conveyed, assigned, hypothecated and/or subrogated any of the rights or causes of action released herein in any manner form or otherwise.

c. The **Settling Parties** have selected and retained, or have been afforded the opportunity to select their own attorneys, experts, and consultants to inspect, analyze and advise them regarding the nature, extent, and cause of the **Claims** and disputes as well as the appropriate redesign, repairs, remediation, corrective work, and/or maintenance of real or personal property or injuries associates with the **Subject Property**.

d. The **Settling Parties** acknowledge and represent that they have had the benefit and advice of legal counsel in evaluating, finalizing and executing this **Agreement**, and that the **Settling Parties**, in making their decision whether to enter this **Agreement**, had sufficient opportunity to consult with legal counsel and each decided, independently, whether to do so.

e. The **Settling Parties** hereby acknowledge that all of their dealings have been conducted at arm's length and that they have neither placed on each other, nor relied on, any special trust or confidence other than the reasonable and customary reliance needed to contract at arm's length.

f. The **Settling Parties** do not know of, have not been informed of, and are not aware of, any information whatsoever concerning any defects or issues concerning the **Claims** other than those which have been alleged in the **Subject Action**. The **Settling Parties** hereby acknowledge that be entering into and performing under this **Agreement**, they shall be deemed to have settled all disputes between them relative to the **Subject Property**.

D. Confidentiality and Covenant Not to Publish Terms of the Settlement Agreement and Release: The **Settling Parties** do hereby agree to refrain from advertising or publicizing to non-parties this **Agreement** or any terms of this **Agreement** in any fashion or form of public media

whatsoever including but not limited to, newspapers, magazines, television, radio, newsletters, mailings, fliers, brochures, blogs, advertisements, and/or internet advertisement. The covenant expressed in this paragraph does not prevent the **Settling Parties** from including salient facts about the settlement in a motion for good faith settlement under NRS 17.245.

F.      This **Agreement** is the result of a compromise among the **Settling Parties** of the disputed Claims. This **Agreement** or any payment made pursuant to this **Agreement** shall never, at any time or for any purpose, be considered an admission of liability and/or responsibility on the part of any of the **Settling Parties** to this **Agreement**, as the **Settling Parties** to this **Agreement** continue to deny such liability and disclaim such responsibility, at all times prior, in concern with, or subsequent to this **Agreement**.

G.      In the event of any action between the **Settling Parties** arising from or related to breach of this **Agreement**:

a.      Such litigation shall be resolved only in a federal or state court located in Nevada, and the enforceability of this provision shall be governed by the laws of Nevada; and

b.      In the event of any action between the **Settling Parties** for breach of, or to enforce any provision or right under the **Agreement**, the unsuccessful party in the action will pay to the prevailing party all costs and expenses, including, but not limited to, reasonable attorneys' fees incurred by the prevailing party in connection with the action.

H.      This **Agreement** is the product of negotiation and preparation by and amongst the **Settling Parties** and their respective attorneys. Neither this **Agreement** nor any provisions hereof shall be deemed prepared or drafted by any one party or another, or its attorneys, and this **Agreement** shall not be construed to follow the maxim that any ambiguity in an agreement be construed against the drafter of such an agreement.

I.      This **Agreement** shall inure to the benefit of, and be binding on, the **Settling Parties** to this **Agreement** and upon their respective successors, assigns, parent companies, divisions, subsidiaries, affiliates, related corporations, members, stockholders, directors, officers, employees, insurers, attorneys, lenders, mortgage holders, tenants, lessees, residents, creditors, partners, joint ventures, legal representatives, agents, heirs, administrators, trusts, trustors, trustees, beneficiaries and legal and equitable owners as applicable in the **Settling Parties** and their Related Persons and Entities.

J.      This **Agreement** may be executed in counterparts, and all such counterparts shall constitute one and the same agreement which shall be binding upon all **Settling Parties** hereto, notwithstanding that the signatures of all **Settling Parties**; designated representatives do not appear on the same page.

K.      The **Settling Parties** to this **Agreement** shall execute and deliver any document which is reasonably necessary to achieve the goals and purposes of this **Agreement**.

L. In any action or proceeding related to this **Agreement**, the **Settling Parties** stipulate that a copy of this **Agreement** may be admissible to the same extent as the original **Agreement**.

M. This **Agreement** and the agreements, documents, and instruments to be executed an delivered pursuant to it are intended to embody the **Settling Parties'** final, complete and exclusive **Agreement** with respect to the matters set forth herein and related transactions. They are intended to supersede all prior agreements, understandings and representations, whether written or oral, with respect to them, and may not be contradicted by evidence of any prior or contemporaneous agreement, understanding or representation, whether written or oral.

N. No waiver of any term or provision hereof or consent to any action hereunder shall constitute a waiver of any other term or provision hereof or consent to any other action hereunder, whether or not similar. No waiver or consent hereunder shall constitute a continuing waiver or consent hereunder or commit a party to provide a waiver or consent in the future, except to the extent specifically set forth in writing.

O. This **Agreement** and any of its terms and provisions may only be modified, amended, supplemented or waived in writing signed by all **Settling Parties** hereto.

P. The **Settling Parties** hereto, and each of them, further represent and declare that they have carefully read this **Agreement** and know the contents thereof, and that they sign the same freely and voluntarily.

Q. If any term or provision of this **Agreement** (other than payment or release terms and provisions) is determined to be illegal, invalid, or otherwise unenforceable through arbitration or through a court of competent jurisdiction, then to the extent necessary to make such provision or this **Agreement** legal, valid, or otherwise enforceable, such term or provision will be limited, construed or severed and deleted from this **Agreement**, and the remaining portion of such term or provision and the remaining other terms and provisions hereof shall survive, remain in full force and effect and continue to be binding, and will be interpreted to give effect to the intention of the **Settling Parties** hereto insofar as possible.

R. Headings contained in this **Agreement** are solely for convenience and shall not be used to define or construe any of the terms or provisions hereof.

S. In the event that one or more of the **Settling Parties** identified herein is no longer a viable business entity and/or is unable to execute this **Agreement**, the **Agreement** shall be deemed to be signed by said **Settling Party** provided that counsel for the **Settling Party** has (i) approved the **Agreement** as to form and content, (ii) has executed the Agreement, and (iii) obtains an order from the Court deeming the **Agreement** signed.

(Signature pages to follow)

**INTENDING TO BE BOUND**, the **Settling Parties** hereto have signed this **Agreement**.

| **Big-D Construction Corp.**<br><br>____________________<br>Printed Name<br><br>____________________<br>Signature<br><br>____________________<br>Date | Form and content acknowledged and reviewed:<br>**Holland & Hart LLP, Counsel for Big-D Construction Corp.**<br><br>____________________<br>Printed Name<br><br>____________________<br>Signature<br><br>____________________<br>Date |
|---|---|
| **Nautilus Insurance Company**<br><br>____________________<br>Printed Name<br><br>____________________<br>Signature<br><br>____________________<br>Date | Form and content acknowledged and reviewed:<br>**Selman Brietman LLP, Counsel for Nautilus Insurance Company**<br><br>____________________<br>Printed Name<br><br>____________________<br>Signature<br><br>____________________<br>Date |

| **<u>Century Surety Insurance Company</u>**<br><br>________________________<br>Printed Name<br><br>________________________<br>Signature<br><br>________________________<br>Date | Form and content acknowledged and reviewed:<br>**Christian, Kravitz, Dichter, Johnson & Sluga, LLC, Counsel for**<br>**<u>Century Surety Insurance Company</u>**<br><br>________________________<br>Printed Name<br><br>________________________<br>Signature<br><br>________________________<br>Date |
|---|---|
| **Take It For Granite Too, Inc.**<br><br>________________________<br>Printed Name<br><br>________________________<br>Signature<br><br>________________________<br>Date | Form and content acknowledged and reviewed:<br>Lewis Brisbois Bisgaard & Smith LLP<br>**Take It For Granite Too, Inc.**<br><br>________________________<br>Printed Name<br><br>________________________<br>Signature<br><br>________________________<br>Date |

# EXHIBIT A

# GENERAL RELEASE AGREEMENT

1. Payment and Release Terms. For the total consideration of Ten Thousand Dollars ($10,000.00) the receipt of which is hereby acknowledged, the undersigned, as an authorized representative of Big-D Construction Corporation ("Big-D"), and its successors, and assigns (hereinafter referred to as "Releasors"), does hereby fully and forever release, acquit, and discharge Nautilus Insurance Company and its respective officers, agents, employees, assigns, claim representatives, attorneys, independent contractors and all other related persons, corporate, partnership or individual (hereinafter "Releasees"), from any and all claims whatsoever they may be, including but not limited to, property damage claims, economic loss claims, insurance claims, tort claims, contractual claims, extra-contractual claims, and statutory claims arising from the application of the Nautilus policies designated by policy numbers BK0010472-2 and BK0010472-3 to Big-D concerning the construction work that its subcontractor, Take It For Granite Too, the named insured under the Nautilus policies identified herein, performed on behalf of Big-D in its capacity as the general contractor for the International Gaming Technology Corporation project in Las Vegas, Nevada and arising from the facts and circumstances alleged and the causes of action stated in the complaint and various other pleadings filed in the litigation entitled *Big-D Construction Corporation v. Take It For Granite Too, Century Surety Company and Nautilus Insurance Company*, designated as Case No. 2:11-cv-00621-PMP-PAL in the Southern District of the United States District Court in Las Vegas, Nevada.

2. Dismissal with Prejudice. The undersigned agrees that pursuant to stipulation the current litigation described herein in paragraph 1 will be dismissed with prejudice only as that litigation pertains to Nautilus Insurance Company with each party to pay their own attorneys' fees and costs.

3. Purpose and Effect. The undersigned acknowledges that the specific purpose of this Release is to make a full and final settlement of all claims whatsoever, whether known or unknown, disputed or otherwise that the Releasors have now or may have in the future against the Releasees identified herein resulting from or in the future developing from the loss described herein. The undersigned further acknowledges that the effect of this

General Release Agreement, after it is signed, will be to forever preclude the Releasors from pursuing any further or additional claims of any kind whatsoever against the Releasees identified herein arising out of the loss described herein.

4.  No Admissions. The payment of this consideration is not to be construed as an admission of liability by any Releasee, but is made as a compromise, settlement, accord and satisfaction of all the claims described herein, all of which remain doubtful, uncertain and disputed.

5.  Warranty – Liens. The undersigned warrants that to his knowledge there are no liens against this settlement. However, the undersigned agrees that for any and all liens that do exist against this settlement, that the Releasors will be responsible for satisfying all such liens. In conjunction with this warranty and agreement, the Releasors do hereby agree to defend, indemnify and hold the Releasees harmless from any and all claims, suits, or demands that may be brought by any lienholder pertaining to this matter.

6.  Warranty – Assignment. The undersigned hereby represents and warrants that the Releasors have not assigned or transferred or purported to assign or transfer to any person and/or business entity, claims or rights as to any matters pertaining to the loss described herein, or any part or portion thereof. Releasors further agree to indemnify and hold harmless the Releasees against any claim, demand, damage, liability, complaint, causes of action, including the payment of attorneys' fees and costs actually incurred, whether or not litigation has commenced, based upon, in connection with, or arising out of, any such assignment or transfer in violation of this representation and warranty.

7.  Understanding and Voluntary Acceptance. The undersigned hereby declares that the terms of this General Release Agreement have been completely read or have been read to him in his native language, and are fully understood and voluntarily accepted for the purpose of making a full and final Release and compromise, adjustment and settlement of any and all claims whatsoever, including, but not limited to insurance, tort, statutory, contractual or extra-contractual claims, known or unknown, disputed or otherwise, against Releasees pertaining to the loss described herein.

8.    Legal Capacity.  The undersigned declares that he is of legal age and capacity, competent and authorized to sign and execute this General Release Agreement on behalf of all Releasors identified herein.

9.    Entire Agreement.  The undersigned further declares and represents that no promise, inducement or agreement, unless herein expressed, has been made to the undersigned and that this document contains the entire agreement and the terms of this document are contractual and not a mere recital.

10.    Independent Advice.  It is understood that the undersigned has relied upon his own judgment, belief and knowledge, based on the advice of his own counsel in executing this General Release Agreement and not upon any representations of the Releasees, or their agents, representatives, attorneys, or other person by them employed.

11.    Modifications and Amendments.  This agreement may not be modified, changed, or supplemented, nor may any obligations hereunder be waived, except in writing.

12.    Titles and Headings.  The paragraph headings appearing in this agreement have been inserted for the purpose of convenience and ready reference. They do not purport to, and shall not be deemed to, define, limit or extend the scope or intent of the paragraphs to which they relate.

13.    Construction.  This agreement has been reviewed and approved by counsel for the undersigned and the normal rule of construction, to the effect that any ambiguities are to be resolved against the drafting party, will not be employed in any interpretation of this agreement.

14.    Miscellaneous.  Whenever used herein, unless the context otherwise requires, the singular shall include the plural and the plural the singular; and words used in any gender, including words of relationship, shall read as including the corresponding words of the opposite or neutral gender.

15. Binding Effect and Nevada Law. This agreement shall be construed and enforced under Nevada law, and when signed, this Agreement will be a binding obligation.

I declare under penalty of perjury under the law of the State of Nevada that the terms of this General Release Agreement are true and correct and that I freely and voluntarily sign this agreement for the use and purposes described therein.

Executed this 27 day of March 2013

By: Forrest D. McNabb
Signature as Authorized Representative of
Big-D Construction

FORREST D. MCNABB
Printed Name

SR VICE PRESIDENT
Title

APPROVED AS TO FORM AND CONTENT:

______________________________
Melissa Beutler
Attorneys for Releasors,
Big-D Construction Corp.

# EXHIBIT B

Gregory S. Gilbert (6310)
Melissa A. Beutler (10948)
HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, Nevada 89134
Telephone: 702-669-4620
Facsimile: 702-669-4650
maBeutler@hollandhart.com
*Attorneys for Plaintiff*
*Big-D Construction Corp.*

**UNITED STATE DISTRICT COURT**

**DISTRICT OF NEVADA**

BIG-D CONSTRUCTION CORP., a Utah corporation,

Plaintiff,

v.

TAKE IT FOR GRANITE TOO, a Nevada corporation; CENTURY SURETY COMPANY, an Ohio corporation; NAUTILUS INSURANCE COMPANY, an Arizona corporation; ROE CORPORATIONS I through X, and ZOE INSURANCE COMPANIES I through X, inclusive,

Defendants.

CASE NO.: 2:11-CV-00621-PMP-PAL

**STIPULATION AND ORDER TO DISMISS ACTION WITH PREJUDICE**

**IT IS HEREBY STIPULATED** by and between the respective attorneys of record for Plaintiff BIG-D CONSTRUCTION CORP. ("Big-D") and Defendants TAKE IT FOR GRANITE TOO ("TIFGT"), CENTURY SURETY COMPANY ("Century") and NAUTILUS INSURANCE COMPANY ("Nautilus") (hereinafter collectively referred to as the "Parties") that a settlement was reached between the Parties during the Mandatory Settlement Conference before the Honorable Judge Peggy Leen, and therefore, the Parties hereby stipulate to dismiss this action in its entirety with prejudice, each party to bear their own attorneys fees and costs (except with respect to the outstanding Nautilus Claims as set forth in the Settlement and Release Agreement).

///

///

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, Nevada 89134

**IT IS HEREBY STIPULATED AND AGREED**, and the Parties request:

1. That the trial of this matter, currently scheduled for December 3, 2013, be vacated as well as all dates related thereto.

DATED this ____ day of August, 2013.

HOLLAND & HART LLP

______________________________
Gregory S. Gilbert (6310)
Melissa A. Beutler (10948)
9555 Hillwood Drive, 2nd Floor
Las Vegas, Nevada 89134
*Attorneys for Plaintiff Big-D Construction Corp.*

DATED this ____ day of August, 2013.

LEWIS BRISBOIS BISGAARD & SMITH LLP

______________________________
Christopher M. Amen, Esq. (6880)
Steven L. Foremaster, Esq. (10350)
6385 S. Rainbow Blvd., Suite 600
Las Vegas, Nevada 89118
*Attorneys for Defendant Take It For Granite Too*

DATED this ____ day of August, 2013.

SELMAN BREITMAN LLP

______________________________
Theodore J. Kurtz, Esq. (1344)
3980 Howard Hughes Parkway, Suite 400
Las Vegas, Nevada 89169
*Attorneys for Defendant Nautilus Insurance Company*

DATED this ____ day of August, 2013.

CHRISTIAN, KRAVITZ, DICHTER & JOHNSON, LLC

______________________________
Douglas L. Christian, Esq. (5253)
Gena L. Sluga, Esq. (9910)
8985 Eastern Ave., Suite 200
Las Vegas, Nevada 89123
*Attorneys for Defendant Century Surety Company*

**IT IS SO ORDERED.**

______________________________
UNITED STATES MAGISTRATE JUDGE

DATED: ______________________________

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, Nevada 89134